1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11

AMALIA NECER,

Case No. 1:21-cv-01730-JLT-CDB

12

Plaintiff,

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

13

v.

(Doc. 20)

14

PHH MORTGAGE CORPORATION, *et al.*,

15

Defendants.

ORDER GRANTING DEFENDANTS' UNOPPOSED REQUEST TO TAKE JUDICIAL NOTICE

16

17

(Doc. 27)

18

19        Pending before the Court is the motion by Defendants PHH Mortgage Corporation and

20   Western Progressive LLC ("Defendants"), filed January 19, 2022, to dismiss the complaint of Plaintiff

21   Amalia Necer ("Plaintiff").  (Doc. 20).  On February 14, 2022, Plaintiff filed an opposition to the

22   motion to dismiss and Defendants filed a reply and request for judicial notice in support thereof on

23   May 23, 2022.  (Docs. 22, 26, 27).[1]  For the foregoing reasons, the Court will grant Defendants'

24   motion to dismiss.

25

26        [1] On March 24, 2023, after the parties consented to the jurisdiction of a United States
Magistrate Judge for the limited purpose of ruling on Defendants' motion to dismiss, the assigned
27   district judge referred Defendants' motion to the undersigned for disposition.  (Docs. 38, 40-41, 46).
As discussed more fully below, the Court held Defendants' motion to dismiss in abeyance at the
28   parties' joint request until October 17, 2023, when the parties made a request for the Court to
adjudicate the motion.  (Doc. 46).

1

**Factual Background**

On October 31, 2005, Plaintiff obtained title to real property located at 13608 Providence Place, Bakersfield, California ("Providence Place") with a purchase money first and second mortgage loan from IndyMac Bank FSB in the amount of $498,000.00 (the "Loan").  (Docs. 1 at ¶¶ 2, 10; 1-13). The Loan was secured by a Deed of Trust, which was recorded against Providence Place.  (Doc. 1-13).  The Deed of Trust required Plaintiff to make regular periodic payments and to pay the Loan in full no later than November 1, 2035.  *Id*. at 2.  Section 20 of the Deed of Trust states:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period, which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

*Id*. at 10.  Section 15 provides:

> All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

*Id*. at 9.  Further, the Deed of Trust provides "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender."  *Id*. at 8.

2

In 2011, Plaintiff filed for Chapter 7 bankruptcy.  (Docs. 1 at ¶ 25; 2-4 at ¶ 7).  At some point, Plaintiff "had a break in [her mortgage] payments because of the pandemic."  (Docs. 22 at 10; 1-3 at 4).  A notice of default and election to sell Providence Place was recorded by the Kern County recorder's office on March 23, 2020.  (Doc. 27 at 4).  Plaintiff thereafter requested a modification of her mortgage from the servicer of the Loan – Defendant PHH Mortgage Corporation ("PHH"), formerly Ocwen Financial Corporation ("Ocwen").  (Docs. 1 at ¶¶ 5, 11; 1-3).

On March 15, 2021, PHH approved Plaintiff's account to enter into a Trial Period Plan ("TPP") under a PHH Mortgage Service Modification Plan.  (Docs. 1 at ¶ 11; Doc. 1-3).  To accept the TPP, "a Mortgage Assistance Acceptance Form" needed to be completed and returned to PHH by May 1, 2021.  (Doc. 1-3).  The TPP required Plaintiff to make three trial payments of $2,129.21 on May 1, 2021, June 1, 2021, and July 1, 2021.  (Docs. 1 at ¶ 11; 1-3 at 2-3).  Plaintiff alleges she made all three TPP payments by cashier's check on April 14, 2021, May 21, 2021, and June 24, 2021.  (Docs. 1 at ¶ 11; 1-4; 1-5; 1-6).  Around July 1, 2021, Plaintiff "began calling [PHH] to find out what she was to do next, and [PHH's] agent told her that the [c]ashier's check 'had not cleared.'"  (Doc. 1 at ¶ 12).  Plaintiff alleges when she checked with Chase Bank, she learned that the check had cleared.  *Id*.  Around July 11, 2021, Plaintiff received a letter from PHH stating that her "recent payment has been returned from [her] banking authority" and to "refer to [her] banking institution."  (Docs. 1 at ¶ 12; 1-7).  In its letter, PHH advised Plaintiff "[i]f these funds represent your mortgage payment, please forward replacement funds" by mailing a replacement check, phone, or online.  (Doc. 1-7).  Thereafter, Plaintiff went to a Chase Bank branch in person and spoke to a teller who "told her again that the check had not been returned."  (Doc. 1 at ¶ 12).

On October 12, 2021, a Notice of Trustee's Sale was recorded by the Kern County Recorder.  (Docs. 1 at 7; 1-11).  The Notice of Trustee's Sale lists Defendant Western Progressive, LLC ("Western Progressive") as the appointed trustee.  (Doc. 1-11).  The date of sale was set for November 24, 2021, at 10:00 AM.  *Id*. at 1.  Around October 20, 2021, Plaintiff alleges she received a version of the Notice that did not contain the recorders' stamp.  (Docs. 1 at 7 [misnumbered ¶ 2]; 1-12).

On November 2, 2021, PHH sent Plaintiff a response letter regarding Plaintiff's apparent request for PHH to "reverse the modification denial."  (Docs. 1 at ¶ 13; 1-8).  The letter told Plaintiff

that her July TPP payment was returned unpaid by the banking institution with the reason "Account not Recorded." *Id*. PHH's letter explained, "[t]o reverse the modification denial, we would require a payment of $10,646.05 before the end of the month." *Id*. In its letter, PHH noted, "[o]nce the required funds are received, the request to reverse the modification denial will be reviewed." *Id*.

Plaintiff called PHH on November 3, 2021. (Doc. 1 at ¶ 14). Plaintiff alleges she spoke with PHH's agent "Gerald" who told Plaintiff that the sale date was "suspended." *Id*. On November 17, Plaintiff called PHH and spoke to PHH's agent "Akilla" purportedly about "the sale date." *Id*. ¶ 15. Akilla told Plaintiff "everything was 'okay'" and to send a check to an address she provided to Plaintiff. *Id*. at ¶ 15. That same day, Plaintiff mailed a cashier's check for $10,646.05 to PHH by overnight delivery. *Id*. at ¶¶ 15-16. The check was received by PHH on November 20, 2021. *Id*. at ¶ 16.

Plaintiff alleges over the next two days, she made multiple calls to PHH to find out the status of her payment. *Id*. Plaintiff asserts she "also made calls to bankruptcy attorneys in case she needed to stop the sale with a chapter thirteen bankruptcy to give her a chance to sell the property and save her equity." *Id*. On November 24, 2021, Plaintiff received a call from PHH's agent "Phillip." *Id*. at ¶ 17. Plaintiff alleges Phillip "told her not to worry, that her cashier's check was being 'processed' so Plaintiff did not file for bankruptcy." *Id*. Later that day, Plaintiff called PHH to find out the status of her payment, and another agent (name not provided), told her that Providence Place had been sold to Jamal Abed (Plaintiff's neighbor) at a foreclosure sale. *Id*. Plaintiff alleges the agent told her it looked like the sale date was "suspended" but that the "suspension" got released the next day. *Id*.

**Procedural Background**

Plaintiff initiated this action with the filing of a complaint against Defendants on December 6, 2021, in which she raises causes of action for: (1) wrongful foreclosure, (2) promissory estoppel, (3) breach of contract, (4) fraud, and (5) violation of the Business and Professions Code §17200 *et al*. ("UCL"). (Doc. 1 at 1, 8-17). That same day, Plaintiff filed an ex parte application for a temporary restraining order ("TRO") and for an order to show cause why a preliminary injunction should not issue. (Doc. 2). Plaintiff requested the Court enjoin Defendants and their successors, agents, officers, servants, employees, attorneys, and/or representatives from transferring title or taking any further

action in reliance of the November 24, 2021, foreclosure sale until a hearing on a permanent injunction could be held. *Id*. at 2.

On December 10, 2021, the Court granted the parties' stipulated request to withdraw Plaintiff's motion for a TRO on the grounds that PHH had instructed Western Progressive to rescind the foreclosure sale. (Docs. 9, 10). In a joint report filed December 28, 2021, the parties represented that the foreclosure sale was rescinded and the buyer's funds were returned to him on December 22, 2021. (Doc. 12).

Defendants filed the instant motion to dismiss on January 19, 2022. (Doc. 20). Defendants argue Western Progressive should be dismissed because Plaintiff's complaint contains no allegations against it. *Id*. at 12-13. Next, Defendants aver the entire complaint fails as a matter of law because Plaintiff failed to provide a "notice of grievance" in compliance with §§ 15 and 20 of the Deed of Trust before filing this action. *Id*. at 13-14. Defendants argue Plaintiff's first claim for wrongful foreclosure is moot and that Plaintiff failed to join a necessary party to the action. *Id*. at 14-15. Defendants also argue Plaintiff fails to state a claim for wrongful foreclosure, promissory estoppel, breach of contract, fraud, and violation of the UCL. *Id*. at 15-26.

On February 14, 2022, Plaintiff filed an opposition to Defendants' motion to dismiss. (Doc. 22). On May 23, 2022, Defendants filed a reply to Plaintiff's opposition. (Doc. 26). Defendants also filed a request for judicial notice and attached a notice of rescission of the notice of default and election to sell, recorded on March 8, 2022. (Doc. 27).

While the motion was pending before the assigned district judge, at the parties' request, the Court scheduled the matter for a settlement conference and convened for a pre-settlement conference with the parties on February 8, 2023. (Docs. 33, 34, 36). Following discussion among the parties and at their request, the Court vacated the settlement conference because Defendants expressed a willingness to extend to Plaintiff a trial loan payment plan. (Doc. 36). Approximately one week later, on February 14, 2023, the parties represented that Plaintiff submitted a loan modification application to PHH. (Doc. 38 at 2.). On March 15, 2023, PHH offered Plaintiff a TPP under PHH's Mortgage Services Modification Plan. *Id*.

On March 21, 2023, the parties filed a joint status report indicating their willingness to have the assigned magistrate judge rule on Defendants' motion to dismiss. *Id*. at 2-3. On March 24, 2023, the assigned district judge referred Defendants' motion to dismiss to the undersigned. (Docs. 40-41).

On April 20, 2023, the Court received an email from the parties that Plaintiff had received a TPP with proposed terms that Plaintiff found acceptable. (Doc. 43 at 4). Plaintiff indicated she had already made the first trial payment in connection with the TPP, and the parties were "looking to settle the rest of the case if possible once the final loan modification is signed after [the] three-month trial period." *Id*. The Court construed the parties' email as a request to stay consideration of the motion to dismiss and held the motion in abeyance. *Id*. at 2.

On October 17, 2023, the parties filed a joint status report noting PHH had permanently modified Plaintiff's loan and that Plaintiff was making her required modified payments. (Doc. 46 at 1). The parties reported they had engaged in further settlement discussions, but that the discussions proved unsuccessful. *Id*. at 2. The parties requested that the Court proceed with ruling on Defendants' motion to dismiss. *Id*.

**Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement

1    if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable

2    for the misconduct alleged."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

3         When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must

4    accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of

5    the non-moving party.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*,

6    627 F.3d 338, 340 (9th Cir. 2010).  The complaint need not include "detailed factual allegations," but

7    must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556

8    U.S. at 678 (citations omitted).  The Court is "not 'required to accept as true allegations that contradict

9    exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are

10   merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'"  *Seven Arts Filmed*

11   *Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall*

12   *v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

13        "For a [Rule] 12(b)(6) motion, a court generally cannot consider material outside the

14   complaint."  *Hamilton v. Bank of Blue Valley*, 746 F. Supp.2d 1160, 1167 (E.D. Cal. 2010) (citing *Van*

15   *Winkle v. Allstate Ins. Co*., 290 F. Supp.2d 1158, 1162, n.2 (C.D. Cal. 2003)).  "Nonetheless, a court

16   may consider exhibits submitted with the complaint."  *Id*.  In addition, a "court may consider evidence

17   on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the

18   document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy

19   attached to the 12(b)(6) motion."  *Id*. at 1168 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.

20   2006)).  Accord, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents

21   are alleged in a complaint and whose authenticity no party questions, but which are not physically

22   attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."),

23   *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F. 3d 1119 (9th Cir. 2002)  "A

24   court may treat such a document as 'part of the complaint, and thus may assume that its contents are

25   true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Hamilton*, 746 F. Supp.2d at 1168

26   (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003))

27        If a court dismisses certain claims, "[l]eave to amend should be granted unless the district court

28   'determines that the pleading could not possibly be cured by the allegation of other facts.'"

1    *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203

2    F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

3    **Defendants' Request for Judicial Notice (Doc. 27)**

4           As set forth above, a court generally may not consider facts or matters outside the pleadings

5    when deciding a motion to dismiss, but it may consider items for which it properly takes judicial

6    notice. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts

7    "not subject to reasonable dispute" because they are either "(1) generally known within the territorial

8    jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources

9    whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court properly may take

10   judicial notice of matters of public record outside the pleadings. *See MGIC Indem. Corp. v. Weisman*,

11   803 F.2d 500, 504 (9th Cir. 1986). A court also may consider a document outside the complaint if

12   "that document's authenticity is not questioned and the plaintiff's complaint necessarily relies on that

13   document." *Ayala v. World Sav. Bank, FSB*, 616 F. Supp. 2d 1007, 1014 n.3 (C.D. Cal. 2009)

14   (citation omitted).

15          Defendants request that the Court take notice of a rescission of notice of default recorded on

16   March 8, 2022, in the Kern County Recorder's Office pertaining to the property at issue. (Doc. 27).

17   Plaintiff did not oppose this request. The Court will take judicial notice of the rescission of notice of

18   default since it is a matter of public record whose accuracy cannot be reasonably questioned. *See Lee*

19   *v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)

20   **Discussion and Analysis**

21       1.   <u>Plaintiff's claims against Western Progressive</u>

22          Defendants assert Western Progressive should be dismissed because Plaintiff's complaint

23   contains no allegations against it. (Doc. 20 at 12). Defendants acknowledge the complaint names

24   Western Progressive as a Defendant but contend "other than naming [Western Progressive] in

25   [p]aragraph 6, the [c]omplaint contains no other mention of [it]." *Id*. at 13. Plaintiff argues the case

26   should remain against Western Progressive until the notice of trustee's sale is rescinded. (Doc. 22 at

27   14). Plaintiff argues Western Progressive needs to remain in this suit because "any declaratory or

28

1   injunctive relief as a result of this action must be directed" at Western Progressive as trustee of the

2   property at issue.  *Id*. at 14-15.

3          Western Progressive must be dismissed from this action.  Plaintiff's complaint contains no

4   allegations as to how Western Progressive harmed Plaintiff in connection with her claims against

5   PHH.  *See generally* (Doc. 1).  Plaintiff's claim that Western Progressive must remain because any

6   declaratory or injunctive relief must be directed at Western Progressive is without merit.  Declaratory

7   and injunctive relief are not independent claims, rather, they are forms of relief.  *Santos v.*

8   *Countrywide Home Loans*, No. Civ. 2:09-02642 WBS DAD, 2009 WL 3756337, at *5 (E.D. Cal. Nov.

9   6, 2009) (citing *McDowell v. Watson*, 59 Cal. App. 4th 1155, 1159 (1997)).  Because Plaintiff has not

10  asserted any cognizable claim against Western Progressive, the Court has no legal basis to impose any

11  declaratory or injunctive relief against Western Progressive.  *E.g.*, *Copeland v. Ocwen Loan Servicing,*

12  *LLC*, No. CV 13–05708 GAF (FFMx), 2014 WL 304976, at *4 (C.D. Cal. Jan. 3, 2014) (dismissing

13  Western Progressive because "neither the pending complaint nor the opposition to the motion to

14  dismiss describe Western Progressive's purported participation in the alleged fraudulent conduct

15  giving rise to the pending claims").

16         Further, the record demonstrates that the foreclosure sale of Providence Place was rescinded,

17  the buyer's funds were returned to him, and Western Progressive recorded a notice of rescission of

18  notice of default and election to sell on March 8, 2022.  (Docs. 12, 27).  In opposition to Defendants'

19  motion to dismiss, Plaintiff concedes "[o]nce [Western Progressive] records a notice of rescission of

20  the Notices of Default and Trustee's Sale, [Western Progressive] could be dismissed as a defendant

21  from this case…"  (Doc. 22 at 14). Accordingly, the Court shall dismiss Western Progressive from this

22  action.

23         2.  Plaintiff's failure to provide a "notice of grievance"

24         Defendants contend §§ 15 and 20 of the Deed of Trust requires Plaintiff, within a reasonable

25  time prior to the filing of a lawsuit, to provide Defendants with a written notice of all grievances she

26  intended to assert against them.  (Doc. 20 at 13).  Defendants argue Plaintiff was obligated to allege in

27  her complaint facts demonstrating compliance with §§ 15 and 20 but failed to do so.  *Id*.  In support,

28  Defendants cite the Ninth Circuit's opinion in *Giotta v. Ocwen Loan Servicing, LLC*, 706 Fed. Appx.

1   421 (9th Cir. 2017).  *Id*. at 13-14.  Defendants aver the *Giotta* court "affirmed [a] trial court's

2   dismissal of plaintiffs' claims based on their failure to comply with the exact same deed of trust notice

3   provision."  *Id*.  Defendants argue, "just as in *Giotta*," Plaintiff is pursuing claims predicated on

4   allegations of conduct arising from the Deed of Trust and that Plaintiff was required to provide

5   Defendants with the requisite "notice of grievance" in compliance with §§ 15 and 20.  *Id*.

6          Plaintiff argues Defendants erroneously attempt "to implant a duty on Plaintiff to communicate

7   a grievance to mortgage servicer [PHH] post-foreclosure sale and prior to filing a lawsuit for wrongful

8   foreclosure."  (Doc. 22 at 15).  Plaintiff asserts the grievance notice provisions in the Deed of Trust

9   apply pre-foreclosure and only to the lender.  *Id*. at 15 (citing *Giotta*, 706 Fed. Appx. at 422).  Plaintiff

10  argues that PHH, as a loan servicer, was not entitled to a notice of grievance.  *Id*. at 15-16.

11  Additionally, Plaintiff claims "there is no evidence or case law that supports a duty of care that a

12  borrower has to a servicer, as Defendant tries to argue here."  *Id*. at 16.

13         In reply, Defendants assert "[c]ontrary to Plaintiff's argument, notice of grievance provisions

14  apply to PHH."  (Doc. 26 at 2).  Next, Defendants argue because Plaintiff's allegations are based on

15  PHH's purported breach under the Deed of Trust, PHH is entitled to claim protections "under the same

16  document."  *Id*. at 3.  Defendants also assert they do not argue Plaintiff owed PHH a legal duty, but

17  instead, that under the relevant provisions of the Deed of Trust, she was obligated to provide a notice

18  of grievance before commencing this action.  *Id*.

19         The Court must first determine whether the notice of grievance provisions apply to PHH.  In

20  *Giotta*, the plaintiffs appealed the district court's dismissal of their Fair Debt Collection Practices Act

21  ("FDCPA") claim against Ocwen.  706 Fed. Appx. at 422.  In its unpublished opinion the Ninth

22  Circuit panel determined that the district court did not err in dismissing the plaintiff's FDCPA claim

23  for failure to comply with the Deed of Trust's "Notice Provision."  *Id*.  The Court noted it was

24  "undisputed that the Giottas did not provide notice."  *Id*.  The Court also held that the "Notice

25  Provision" applied to Ocwen, as a servicer to the loan.  *Id*.  Specifically, the Court determined:

26
27         "The Notice Provision requires notice to Ocwen.  Per its text, the Notice Provision applies only
           to the 'Lender.'  However, the Deed of Trust explicitly provides that '[t]he covenants and
           agreements of this Security Instrument shall bind (except as provided in Section 20) and
28         benefit the successors and assigns of Lender.'  Further, it specifically notified the Giottas that

10

the note may be sold.  Although Ocwen is not the 'Lender' as defined in the Deed of Trust, it is an assign.  Per the record, OneWestBank assigned the servicing rights on the Giottas' mortgage to Ocwen: '[Ocwen] and [OneWestBank] desire to set forth the terms and conditions pursuant to which [OneWestBank] will sell, transfer and assign, to [Ocwen], all of [OneWestBank's] right, title and interest in and to such Mortgage Servicing Rights.'  Providing notice before filing an action is a benefit (as opposed to a binding covenant or agreement), because it gives the Lender prior notice and an opportunity to take corrective action before litigation is formally commenced.  Therefore, as an assign of the Lender, the Notice Provision is a 'benefit' of the 'covenants and agreements' in the Deed of Trust, inuring to Ocwen."

*Id*.  Following the *Giotta* Court's opinion, other district courts have held that similar "Notice Provisions" applied to loan servicers.  *Wilde v. Flagstar Bank FSB*, No. 18cv1370-LAB (BGS), 2019 WL 1099841, at *1, n. 2 (S.D. Cal. Mar. 8, 2019); *Neagle v. Goldman Sachs Grp., Inc.*, No. 6:18-cv-00754-MC, 2019 WL 1102199, at *1-2, 5 (D. Or. Mar. 1, 2019); *Smith v. Flagstar Bank, FSB*, No. C 18-02350 WHA, 2018 WL 3995922, at *1, 3-4 (N.D. Cal. Aug. 21, 2018).

Plaintiff's complaint, as currently pled, contains no allegation that she complied with the Deed of Trust's "Notice Provision" before filing a lawsuit against PHH.  *See generally* (Doc. 1).  The undersigned finds the reasoning of the district court decisions cited above persuasive similarly concludes that Plaintiff was required to provide notice to PHH, a loan servicer.  Specifically, Section 13 of the Deed of Trust expressly provides "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender."  (Doc. 1-13 at 8).  Accordingly, PHH, as a loan servicer and assignee of the lender with respect to the collection of the loan payments, was entitled to notice under §§ 15 and 20.

Next, the Court must determine whether some or all of Plaintiff's claims fall within this "Notice Provision" such that Plaintiff's failure to provide notice demands dismissal.  Certainly, causes of actions that directly relate to a provision in the agreement or a party's performance under the contract require notice.  *See, e.g., Wilde*, 2019 WL 1099841, at *3 (finding plaintiff's cause of action for breach of contract "necessarily falls within the scope of the notice-and-cure provision because it directly relates to Flagstar's performance under the contract").  However, courts within the Ninth Circuit have split on whether similar notice provisions apply to statutory claims.  Some courts, like the *Giotta* Court, have held that where statutory claims arise out of actions taken pursuant to the contract that contains a notice provision, a plaintiff must plead compliance with the provision.  *See Giotta*, 706

1   Fed. Appx. at 422 (holding that suit, including statutory causes of action, constituted a judicial action

2   that arose from the other party's actions and fell under the contract's notice provision); *Wilde*, 2019

3   WL 1099841, at *3; *King v. Navy Fed. Credit Union*, No. 2:23-cv-05915-SPG (AGRx), 2023 WL

4   8250482, at *3 (C.D. Cal. Oct. 19, 2023); *Neagle*, 2019 WL 1102199, at *5.  Other district courts in

5   the Ninth Circuit have found the opposite, declining to apply a contractual notice provision to statutory

6   claims that relate to duties independent of the contract.  *Kivett v. Flagstar Bank*, 333 F.R.D. 500, 504

7   (N.D. Cal. 2019), overturned on other grounds, No. 21-15667, 2022 WL 1553266 (9th Cir. May 17,

8   2022); *McShannock v. JP Morgan Chase Bank N.A.*, 354 F. Supp. 3d 1063, 1072 (N.D. Cal. 2018),

9   reversed and remanded on other grounds, 976 F.3d 881 (9th Cir. 2020).

10         The Court finds, at least as applied to this action, that the reasoning of *Giotta* is persuasive.

11   The Notice Provision of the Deed of Trust provides "[n]either Borrower nor Lender may commence,

12   join, or be joined to any judicial action (as either an individual litigant or the member of a class) that

13   arises from the other party's actions pursuant to this Security Instrument or that alleges that the other

14   party has breached any provision of, or any duty owed by reason of…"  (Doc. 1-13 at 10).  Thus

15   claims, even statutory claims, that arise from the other party's actions pursuant to the Deed of Trust

16   are subject to the Notice Provision.

17         Plaintiff acknowledges the TPP is a modification of Plaintiff's mortgage contract.  (Doc. 1 at

18   ¶¶ 11, 28).  Plaintiff is exclusively pursuing claims that relate to Defendants' alleged performance

19   under the TPP and subsequent foreclosure sale.  Even Plaintiff's statutory claim under the UCL is

20   based on PHH's alleged unlawful behavior concerning the TPP and subsequent foreclosure sale.

21   Thus, Plaintiff's claims expressly arise from Defendants' actions pursuant to the contract between

22   them.  As Plaintiff has not adequately pled compliance with the Notice Provisions in §§ 15 and 20,

23   Plaintiff's claims shall be dismissed.

24         Even if Plaintiff provided the requisite notice to file this lawsuit, Defendants' motion to

25   dismiss would still be granted for Plaintiff's failure to state a claim.  As stated above, Plaintiff raises

26   claims for (1) wrongful foreclosure, (2) promissory estoppel, (3) breach of contract, (4) fraud, and (5)

27   violation of the UCL.  (Doc. 1).  The Court shall address the parties' arguments and the merits of each

28   claim in turn.

### 3.   Wrongful Foreclosure

In her cause of action for wrongful foreclosure, Plaintiff claims the PHH waived her breach (default) by accepting TPP payments and a lump sum payment to cure her default.  (Doc. 1 at ¶ 19). Plaintiff alleges PHH's claims that the last TPP payment "had not cleared' or had "been returned" were false claims and an attempt to subvert the law through "dual tracking."  *Id*. at ¶¶ 20-21 (citing Cal. Civil Code § 2923.6).

Under California law, a claim of wrongful foreclosure must allege that: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust, (2) the party contesting the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed, and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from doing so.  *Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 408 (2015) (citing *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011)).  "The first element may be satisfied by allegations that (1) the trustee or beneficiary failed to comply with the statutory procedural requirements for the notice or conduct of the sale; (2) the trustee did not have the power to foreclose; (3) the trustor was not in default, no breach had occurred, or the lender waived the breach; or (4) the deed of trust was void."  *West v. JPMorgan Chase Bank, N.A*, 214 Cal. App. 4th 780, 800 (2013); *Cardenas v. Caliber Home Loans, Inc.*, 281 F. Supp. 3d 862, 872 (N.D. Cal. 2017).

Defendants first argue Plaintiff's wrongful foreclosure claim must be dismissed under Federal Rule of Civil Procedure 12(b)(1) because the claim is moot.  (Doc. 20 at 14-15).  Defendants contend the trustee's sale has been rescinded and the purchase funds have been returned to the purchaser.  *Id*. at 15.  In opposition, Plaintiff avers that the damages incurred by the wrongful foreclosure are ongoing because Defendant has not rescinded the foreclosure notice.  (Doc. 22 at 17-18) (citing California Civil Code § 2924.11).

Under California Civil Code § 2924.12, "[]f a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Sections 2923.55, *2923.6*, 2923.7, 2924.9, 2924.10, *2924.11*, or 2924.17."  Cal. Civ. Code § 2924.12(a)(1) (emphasis added).  "After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee,

13

beneficiary, or authorized agent shall be liable to a borrower for actual economic damages" if it has violated those same statutory provisions.  *Id*. § 2924.12(b).  "In other words, if a notice of sale has not yet been recorded, a plaintiff is limited to injunctive relief.  By contrast, if the notice of sale has already been recorded, a plaintiff may seek monetary damages."  *Taylor v. Citimortgage, Inc.*, No. 1:17-cv-01231-DAD-JLT, 2018 WL 3770532, at *3 (E.D. Cal. Aug. 8, 2018) (citing *Jent v. N. Tr. Corp.*, No. 2:13-1684 WBS CKD, 2014 WL 172542, at *4 (E.D. Cal. Jan. 15, 2014)).

Here, Plaintiff does not allege that any notice of sale has been recorded.  In fact, the record demonstrates that the foreclosure sale was rescinded.  (Doc. 12).  Accordingly, Plaintiff may not recover any monetary damages under § 2924.12.

Plaintiff's request for injunctive relief also fails.  Section 2924.12(c) provides that "[a] mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of a trustee's deed upon sale." This provision functions as a "safe harbor" for defendants and allows them to avoid liability under California's Homeowner Bill of Rights ("HBOR") to the extent any past violations have been cured. *See Pearson v. Green Tree Servicing, LLC*, No. 14-cv-04524-ISC, 2014 WL 6657506, at *2 (N.D. Cal. Nov. 21, 2014) ("[I]f the servicer takes action to correct the violation before proceeding to foreclosure, no liability results.").  Defendants rescinded the notice of default on March 8, 2022.  (Doc. 27).  This is sufficient to constitute remediation under § 2924.12(c) since there is no longer any legally operative notice of default.  *Cf. Vasquez v. Bank of Am., N.A.*, No. 13-cv-02902-JST, 2013 WL 6001924, at *7 (N.D. Cal. Nov. 12, 2013) ("Plaintiff may not seek remedies under Section 2924.12 that do not apply to the present status of the property.").  Thus, Plaintiff's wrongful foreclosure claim is moot.

Next, Defendants argue Plaintiff's wrongful foreclosure claim fails because Plaintiff did not join the purchaser, Jamal Abed.  (Doc. 20 at 15).  Defendants contend Mr. Abed is a necessary and indispensable party to this action and "without him, the Court cannot enjoin [] further transactions involving the Property."  *Id*.  Defendants' argument on this point is unavailing.

Federal Rule of Civil Procedure 12(b)(7) allows a litigant to request dismissal for "failure to join a party under Rule 19."  Fed. R. Civ. 12(b)(7).  Rule 19 imposes a three-step inquiry:

14

(1) is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a)?  (2) If so, is it feasible to order that the absent party be joined?  (3) If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?

*Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012) (footnote and citation omitted).  A party may be necessary under Rule 19(a) in three different ways.  *Id*.  First, a person is necessary if, in his absence, the court cannot accord complete relief among the existing parties.  *Id*. (citing Fed. R. Civ. P. 19(a)(1)(A)).  Second, a person is necessary if he has an interest in the action, and resolving the action in his absence may as a practical matter impair or impede his ability to protect that interest.  *Id*. (citing Fed. R. Civ. P. 19(a)(1)(B)(i).  Third, a person is necessary if he has an interest in the action, and resolving the action in his absence may leave an existing party subject to inconsistent obligations because of that interest.  *Id*. (citing Fed. R. Civ. P. 19(a)(1)(B)(ii).

The Court finds Mr. Abed is not a necessary person in this action.  The foreclosure sale of Providence Place was rescinded, and Mr. Abed's funds were returned to him.  (Doc. 12).  Therefore, Mr. Abed does not have an interest in the Providence Place and this case.

Defendants also assert Plaintiff's wrongful foreclosure claim fails because she did not and cannot adequately allege the required elements.  (Doc. 20 at 15).  Defendants argue Plaintiff failed to overcome the "presumption of validity" as to PHH's process.  *Id*. at 15-16.  Specifically, Defendants aver "Plaintiff was required to allege facts establishing that she complied with all of [her] obligations under the Note and the Deed of Trust."  *Id*. at 16.  Defendants claim Plaintiff did not comply with her obligations under the TPP, as her last trial payment was not cleared by her bank and was returned.  *Id*.  Defendants contend PHH did not waive Plaintiff's breach.  *Id*. at 17.  Separately, Defendants argue Plaintiff did not allege any facts to demonstrate that PHH's conduct caused her impermissible prejudice and that she satisfied the tender rule.  *Id*. at 17-18.

Plaintiff argues she does state a claim that overcomes the presumption of validity.  (Doc. 22 at 21).  Plaintiff asserts the statutory violation of "dual tracking" is "sufficient to overcome the rebuttable presumption of a lawful foreclosure…"  *Id*.  Plaintiff claims she "provided sufficient evidence that she complied with a foreclosure alternative," and that PHH engaged in dual tracking when it foreclosed on her property despite promising "to review the modification denial."  *Id*. at 21-22.  Plaintiff also asserts

1   it would be inequitable to require tender.  *Id*. at 22.  Plaintiff avers PHH's violation of "California's

2   foreclosure statutes by not recording a rescission of the notice of default as soon as Plaintiff complied

3   with the TPP but instead recording a Notice of Trustee's Sale" excuses the requirement of tender.  *Id*.

4   at 22-23 (citing Cal. Civ. Code § 2924.11(d)).

5          In reply, Defendants claim Plaintiff misunderstands the statutory definition of dual tracking.

6   (Doc. 26 at 4).  Defendants argue that dual tracking occurs only after a completed application is

7   pending and the servicer proceeds with the recording of foreclosure notices or with the trustee's sale.

8   *Id*. at 4-5 (citing Cal. Civ. Code § 2923.6(c) and (h)).  Defendants also argue Plaintiff has offered no

9   facts to suggest that it would be inequitable to require her to satisfy the tender rule and Plaintiff has

10  failed to "allege that she executed a permanent foreclosure prevention alternative."  *Id*. at 5 (citing Cal.

11  Civ. Code § 2924.11(d)).

12         Under California's HBOR, "a mortgage servicer, mortgage servicer, mortgagee, trustee,

13  beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a

14  trustee's sale, while the [borrower's] complete first lien loan modification application is pending."

15  Cal. Civ. Code § 2923.6(c).  This activity, in which a lender engages in a loan modification

16  negotiation while at the same time moving toward a non-judicial foreclosure sale, is known as "dual

17  tracking."  *Haltom v, NDEx W., LLC*, No. 2:16-cv-00086-TLN-KJN, 2016 WL 8731166, at *2 (E.D.

18  Cal. Jan. 15, 2016); *see Ryan-Beedy v. Bank of N.Y. Mellon*, 293 F. Supp. 3d 1101, 1115 (E.D. Cal.

19  2018) (dual tracking is an inherently unfair business practice, and as such it alone is sufficient to state

20  a claim for wrongful foreclosure) (citation omitted).  An application shall be deemed "complete" when

21  a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer

22  within the reasonable timeframes specified by the mortgage servicer.  Cal. Civ. Code § 2923.6(h).

23         Plaintiff's March 15, 2021, mortgage assistance offer (TPP) provides that to accept the offer, a

24  "Mortgage Assistance Acceptance Form" was required to be completed and returned by May 1, 2021,

25  and that she needed to make three trial payments of $2,129.21 on May 1, 2021, June 1, 2021, and July

26  1, 2021.  (Doc. 1-3).  Plaintiff's complaint fails to allege that she returned a complete "Mortgage

27  Assistance Acceptance Form" to PHH as required.  In fact, Plaintiff's complaint makes no mention of

28  the form at all.  *See generally* (Doc. 1).  Plaintiff does not allege she completed an application when

16

the notice of sale was issued.  Accordingly, the Court concludes that Plaintiff cannot state a claim for wrongful foreclosure pursuant to California Civil Code § 2923.6(c).  *See e.g., Darsow v. Wells Fargo Bank, N.A.*, No. 8:19-cv-01252-JLS-JDE, 2019 WL 6391520, at *4 (C.D. Cal. Sept. 3, 2019) (dismissing claim with prejudice because plaintiff failed to allege facts sufficient to show that he submitted a complete loan modification application).  Accordingly, Plaintiff has failed to state a claim for wrongful foreclosure.

  4. <u>Promissory Estoppel</u>

   In her cause of action for promissory estoppel claim, Plaintiff alleges Defendant told Plaintiff if she made the TPP payments she would get a modification.  (Doc. 1 at ¶ 24).  Plaintiff claims she reasonably expected the promise to be kept because she kept her part of the promise and timely mailed in all three payments in the form of cashier's checks.  *Id*.  Plaintiff asserts "[PHH] further induced Plaintiff's reliance by telling her that her modification would be re-considered (denial reversed) if she would send another check for $10,646.05 before the end of the month."  *Id*. at ¶ 25.  Plaintiff claims she was considering filing bankruptcy but PHH's agent "insured her reliance on their false promise by telling her that her sale had been 'suspended,' leading her to believe that her check had been received and the modification would then proceed."  *Id*.

   In California, the elements of promissory require "(1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages measured by the extent of the obligation assumed and not performed."  *Poway Royal Mobilehome Owners Assn. v. City of Poway*, 149 Cal. App. 4th 1460, 1471 (2007) (citations omitted).  Under this doctrine, "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."  *Kajima/Ray Wilson v. Los Angeles County Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000) (quoting Restatement (Second) of Contracts, § 90(1) (1981)).

   Defendants assert Plaintiff cannot allege reasonable and foreseeable reliance that she would be provided a loan modification.  (Doc. 20 at 18-19).  Specifically, Defendants aver that the TPP informed Plaintiff that she would be considered for a modification had she made all TPP payments and returned a completed Mortgage Assistance Acceptance form.  *Id*. at 18.  Defendants contend Plaintiff

1   "admitted that her third TPP payment was returned because it did not clear her bank and she did not

2   allege that she returned a completed Mortgage Assistance Acceptance Form to PHH." *Id*.  Defendants

3   also argue Plaintiff's claim fails because her "material change in position did not go beyond the

4   benefit of the bargain." *Id*.

5          In opposition, Plaintiff asserts she has a valid claim for promissory estoppel because PHH

6   "told her in writing, and over the phone, that she had until November 30, 2021, to resolve a claimed

7   deficiency." (Doc. 22 at 19-20).  Plaintiff argues she reasonably relied on PHH's promises and acted

8   to her detriment by forgoing bankruptcy and sending PHH a check for $10,646.05. *Id*. at 20.

9          Plaintiff fails to sufficiently allege a claim for promissory estoppel.  First, Plaintiff's complaint

10  does not reconcile how Plaintiff could have reasonably expected that if she made the TPP payments

11  she would get a loan modification. *See* (Doc. 1 at ¶ 24).  The March 15, 2021, mortgage assistance

12  offer states "[i]n order to be considered for a modification, the proposed trial period payments must be

13  completed." (Doc. 1-3 at 1).  Thus, there was no promise Plaintiff would be provided a loan

14  modification, only that she would be "considered" for one.

15         Moreover, Plaintiff's complaint does not indicate that she submitted a completed application

16  for a loan modification. *Supra* at 16.  Plaintiff's complaint alleges that she was expressly told her third

17  check "had not cleared" and that her payment had "been returned" in July 2021.  (Doc. 1 at ¶ 12).

18  Plaintiff did not follow up with PHH until several months later. *See id*. at ¶¶ 12-17.  Thus, Plaintiff

19  has not adequately alleged that her reliance on any purported promise by PHH to be provided a loan

20  modification was reasonable.

21         Plaintiff's argument that she acted to her detriment by forgoing bankruptcy is unavailing.

22  (Doc. 22 at 20-21).  While an "alleged promise to negotiate with a borrower to reinstate and modify a

23  loan if the borrower would forgo a bankruptcy petition is sufficiently clear and unambiguous to trigger

24  promissory estoppel," *Beltz v. Wells Fargo Home Mortg.*, No 2:15-cv-01731-TLN-CKD, 2017 WL

25  784910, at *8 (E.D. Cal. Mar. 1, 2017) (citing *Aceves v. U.S. Bank, N.A.,* 192 Cal. App. 4th 218, 221,

26  (2011), as modified (Feb. 9, 2011)), here, Plaintiff does not allege she attempted to file a bankruptcy

27  action or that PHH dissuaded her from filing for bankruptcy.  There is no allegation that PHH even

28  knew Plaintiff "was just about" to file for bankruptcy "when [PHH's] agent insured her reliance on

their false promise by telling her that her sale had been 'suspended.'" (Doc. 1 at ¶ 25).  On the facts of this case, the Court finds that Plaintiff has failed to state a claim for promissory estoppel.

### 5. Breach of Contract

Plaintiff raises a breach of contract claim for PHH's failure to comply with the terms of the TPP.  *Id*. at ¶ 27.  Plaintiff claims PHH's "later actions in extorting another $10,646.05 from Plaintiff under the false pretense that Defendant needed the sum to 'reverse the denial'" and subsequent foreclosure show that the breach was "intentional."  *Id*. at ¶ 29.  A breach of contract claim requires facts showing: (1) the existence of a contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach of the contract, and (4) damages flowing from said breach.  *Oasis W. Realty, Inc. v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Defendant asserts Plaintiff's breach of contract claim fails because she cannot allege her performance under the TPP.  (Doc. 20 at 19-20).  Plaintiff counters she did perform "every contractual duty under the TPP" and PHH intentionally breached the TPP.  (Doc. 22 at 23-24).  As discussed above, the Court finds Plaintiff has not pled performance or excuse for non-performance of returning a completed Mortgage Assistance Acceptance Form to PHH.  *Supra* at 16.  Accordingly, Plaintiff has failed to state a claim for breach of contract.

### 6. Fraud

Plaintiff also raises a claim of fraud against Defendants.  (Doc. 1 at ¶¶ 30-33).  Rule 9(b)'s heightened pleading standards apply to claims premised on fraud.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. 9(b).  In other words, the plaintiff must articulate the "who, what, when, where, and how" of the fraud alleged.  *Kearns*, 567 F.3d at 1126; *see Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (explaining that to avoid dismissal for failure to meet the standards under Rule 9(b), "[a] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").  "For corporate defendants, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke what they said or wrote, and when it was said or written."  *Flowers v. Wells Fargo Bank, N.A.*, No. C 11-1315

PJH, 2011 WL 2748650, at *6 (N.D. Cal. Jul. 13, 2011).  If allegations of fraud do not meet the heightened pleading standard, the "averments…should be disregarded, or stripped from the claim for failure to satisfy Rule 9(b)."  *Kearns*, 567 F.3d at 1124 (quotations omitted).

Here, Plaintiff offers no facts to substantiate her fraud claim.  Instead, Plaintiff recites the elements of fraud and negligent misrepresentation, cites to case law, and requests an award of punitive damages.  (Doc. 1 at ¶¶ 31-33).  Plaintiff fails to state a claim for fraud under the requirements of Rule 12(b)(6) in light of the heightened pleading standards of Rule 9(b) and for corporate defendants.  Accordingly, Plaintiff has failed to state a claim for fraud.

   7.   Violation of the UCL

Plaintiff's final cause of action is for violation of the UCL.  *Id*. at ¶¶ 34-39.  Plaintiff alleges PHH's dual tracking of her loan modification application and foreclosure violated the UCL.  *Id*. at ¶ 37.

Under the UCL, unfair competition includes any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Therefore, there are three prongs under which a claim may be established under §17200.  *Daro v. Super. Ct.*, 151 Cal. App. 4th 1079, 1093 (2007) ("Because section 17200 is written in the disjunctive, a business act or practice need only meet one of the three criteria—unlawful, unfair, or fraudulent—to be considered unfair competition"); *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 731 (9th Cir. 2007) ("[e]ach prong…is a separate and distinct theory of liability").  Further, a claim under § 17200 may rest on a violation of another law.  *Farmers Ins. Exch. v. Super. Ct.*, 2 Cal.4th 377, 383 (1992).  Under the UCL, an action may be unfair even if it is not unlawful.  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 181 (1999).

Defendants argue Plaintiff has not alleged any facts to demonstrate conduct by Defendants that can be classified as any unlawful, fraudulent, or unfair business act or practice.  (Doc. 20 at 24-25).  Defendants claim Plaintiff did not allege any facts to demonstrate standing.  *Id*. at 25.  Further, Defendants contend because Plaintiff cannot state an underlying violation, her claim for violation of

1  the UCL fails as well. *Id*. at 26. In opposition, Plaintiff reasserts that PHH has committed "dual

2  tracking" and is in violation of federal law. (Doc. 22 at 26-28).[2]

3        The Court finds Plaintiff has failed to allege that PHH engaged in "dual tracking," *Supra* at

4  16. In the absence of a violation of a borrowed law, a UCL claim fails under the unlawful prong of §

5  17200. In addition, to the extent Plaintiff relies on wrongful foreclosure, promissory estoppel, breach

6  of contract, or fraud to serve the basis for her UCL claim, the UCL claim fails for the reasons

7  mentioned above. Because there is no underlying violation, the Court need not address Defendants'

8  standing argument.

9  **Leave to Amend**

10        Plaintiff requests leave to amend her complaint because she "is not in bad faith, there has been

11  no delay, nor will an amendment prejudice Defendants in any manner." (Doc. 22 at 28-29).

12  Generally, Rule 15 provides that "leave [to amend] shall be freely given when justice so requires."

13  Fed. R. Civ. P. 15(2). However, district courts are only required to grant leave to amend if a

14  complaint can be saved. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). "Courts are not

15  required to grant leave to amend if a complaint lacks merit entirely." *Id*. When a complaint cannot be

16  cured by additional facts, leave to amend need not be provided. *Doe v. United States*, 58 F.3d 494,

17  397 (9th Cir. 1995).

18        Plaintiff's complaint fails as a matter of law because Plaintiff failed to provide a "notice of

19  grievance" before filing this action and because she fails to state a claim. *Supra* at 9-12. The Court

20  concludes that further leave to amend Plaintiff's complaint would be futile and would unnecessarily

21  prolong this litigation. *See e.g., Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002);

22  *Wilde*, 2019 WL 1099841, at *3 ("Because the time for complying with the notice-and-cure provision

23  expired when Wilde filed suit – and because Wilde does not allege in either his complaint or

24  opposition that he complied with this provision – amendment would be futile.").

25  / / /

26

27

28     [2] Plaintiff asserts in opposition that PHH violated 12 CFR § 1024.41(c) for failing to notify Plaintiff in writing that her foreclosure alternative was denied before foreclosing. (Doc. 22 at 27-28). Plaintiff did not raise this issue in her complaint. *See generally* (Doc. 1).

**Conclusion and Order**

For the foregoing reasons, the Court shall grant Defendants' motion to dismiss in its entirety and dismiss Plaintiff's complaint with prejudice and without leave to amend.  Accordingly, IT IS HEREBY ORDERED:

1. Defendants' motion to dismiss (Doc. 20) is GRANTED;

2. Plaintiff's complaint (Doc. 1) is DISMISSED WITH PREJUDICE; and

3. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **June 10, 2024**

UNITED STATES MAGISTRATE JUDGE

22